**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


**MICHAEL W. LINDSEY,[1]**

      **Petitioner,**

**vs.**

                          **CASE NO. 3:08cv84-RV/WCS**

**WALTER McNEIL,**

      **Respondent.**

_____/


## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by Michael W. Lindsey pursuant

to 28 U.S.C. § 2254.  Doc. 1.  Petitioner challenges his conviction for aggravated battery

with great bodily harm or with a deadly weapon in the Circuit Court of the First Judicial

Circuit, in and for Escambia County, Florida, case number 02-5354-CF.  *Id*.  Petitioner

was sentenced to 30 years in prison as an habitual offender.  Doc. 20, Ex. H

_____

[1] The Clerk is directed to change the last name of Petitioner on the docket to
Lindsey.  Petitioner was charged and convicted as Michael Wayne Lindsey.  Doc. 20,
Ex. A, R. 1.  He is serving his sentence with the Florida Department of Corrections as
Michael W. Lindsey.  He referred to himself as Lindsay in his petition.

(references herein to exhibits are to those filed in paper form with the answer, document 20). Respondent filed an answer and the record in paper form. Doc. 20. Petitioner was afforded an opportunity to file a traverse, doc. 25, but did not do so. Respondent concedes that the petition was timely filed. Doc. 20, p. 5.

**The Evidence at Trial**

Terry Lee Jones testified that Petitioner had left two motor vehicles at his paint and body shop for about two years. Ex. A, R. 15. Jones had disposed of both cars. *Id.*, R. 16. Petitioner came to the shop, demanding return of one of his cars. *Id.*, R. 18. When he was told that the car was no longer there, Petitioner became angry. *Id.* Petitioner came so close to Jones that Jones struck Petitioner. *Id.* A fist fight ensued. *Id.* Jones chased Petitioner, trying to make Petitioner leave through the gate of the shop yard. *Id.*, R. 20. Jones said that he had a stick "yea long," and told Petitioner to leave. *Id.* The stick was like a broom stick, said Jones. *Id.*, R. 28. Petitioner had a pipe. *Id.*, R. 20. Jones admitted that he had also swung his stick at Petitioner, apparently at an earlier point. *Id.*, R. 22, 28. Jones said that Petitioner was told to leave and would not leave. *Id.*, R. 32. At the gate to the shop yard, Petitioner hit Jones with the pipe. *Id.*, R. 21. Jones said he thought the fight was over at that point, and let his guard down, and that is when Petitioner hit him with the pipe. *Id.*, R. 31. Jones said that he did not go outside the gate and did not swing at Petitioner with anything at the time he was hit with the pipe. *Id.*, R. 31. Petitioner hit Jones on the left side of his head with the pipe and knocked him unconscious. *Id.*, R. 23-24. Jones said that as a result of this battery, his equilibrium is off, and when he gets up, he falls down. *Id.*, R. 24. He

went to the hospital that night. *Id.*, R. 25. Jones said that his jaw was broken and he had been referred to a dentist. *Id.*

Raymond Stokes testified that he was at the paint and body shop that day. *Id.*, R. 33. Stokes said he saw Petitioner pick up a pipe while he was inside the shop yard. *Id.*, R. 35-36. He described the pipe as a gas filler pipe that runs into an automobile gas tank. *Id.* Stokes said that he did not see anything in Jones's hands when Petitioner picked up the pipe. *Id.*, R. 36. The police had been called, and Jones was telling Petitioner "to leave and take it somewhere else." *Id.*, R. 37. Stokes said that Jones still had nothing in his hands. *Id.* Jones was standing at the gate, and Petitioner was "flinching," "faking like he was going to hit Mr. Jones." *Id.*, R. 38. Stokes told Jones to step back and Petitioner hit Jones with the pipe. *Id.* Jones "went unconscious" and an ambulance was called. *Id.*, R. 40.

Another witness, Bobbie Randall, testified that Petitioner had "a little pipe" and Jones had a "little broomstick." *Id.*, R. 50. He said that the "little pipe" was six or seven feet long. *Id.* He said that Jones was just standing there with the broomstick and was not swinging it at Petitioner. *Id.*, R. 51. Petitioner was outside the gate and held the pipe like a baseball bat. *Id.* He said that Petitioner and Jones were "just arguing," and Petitioner hit Jones with the pipe. *Id.*, R. 52. Randall said that Jones had not made any move toward Petitioner when this happened. *Id.*

Thomas Bolling said that he saw Jones and Petitioner standing at the gate and Jones did not have anything in his hand. *Id.*, R. 54-55. He said that Jones did not make any motions or gestures toward Petitioner, but was just standing there. *Id.*, R. 55-

56. Petitioner had a pipe in his hand holding it like a batter at the plate. *Id.*, R. 56. Petitioner hit Jones with the pipe from this position. *Id.* Bolling said that Jones was knocked out, and blood was coming from his mouth and ear. *Id.*, R. 59.

Petitioner testified. *Id.*, R. 65. Petitioner did not deny that he struck Jones. *Id.*, R. 66. He said he struck Jones because he felt that his life was threatened. *Id.* He said he took a punch and was hit with a stick before he struck Jones with the pipe. *Id.* Petitioner said that "they" chased him to the gate. *Id.* He said he had three people chasing him, and he reached down and grabbed "it." *Id.* He turned around and "just did it out of shock." *Id.* He said he was on his way out of the shop yard at the time. *Id.*, R. 67. He said that he had the pipe only 30 to 40 seconds before he struck Jones. *Id.*

Petitioner said that the argument began after Jones told him that he had sold Petitioner's car. *Id.*, R. 68-69. He said that he and Jones were mad, and Jones "just swung on me." *Id.*, R. 69. On cross examination, Petitioner said that Stokes also had a pipe. *Id.*, R. 70. He said that it was a "heavy pipe," the kind that goes in the ground. *Id.*, R. 71. Petitioner said he first tried to escape over the fence in the back, but the fence was too high, and he had turn back and run through "them" to get out, and that is when Jones hit him with the stick. *Id.*, R. 71-72. Petitioner said that when he got to the front gate, he was backing away. *Id.*, R. 73. He said that he had already been hit several times with the stick. *Id.*, R. 76. He admitted that he could have kept on running but instead hit Jones in the head with the pipe. *Id.*, R. 73-74. Petitioner admitted that he had been convicted of five felonies previously, two of which were crimes of dishonesty. *Id.*, R. 74.

Terry Lee Jones was recalled by Petitioner as a witness. *Id.*, R. 78. Jones said that Stokes did not have a pipe or anything in his hand. *Id.*, R. 79. On cross examination, Jones said that he had let down the stick he was holding because he "thought it was over with." *Id.*, R. 80. He said he was holding the stick to protect himself from Petitioner's pipe. *Id.* Jones said that Petitioner was "just smiling, laughing" while he was running out of the shop yard. *Id.*, p. 81.

**Section 2254 Standard of Review**

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).[2] But habeas corpus relief may be granted only if Petitioner has properly exhausted his federal claims in state court. § 2254(b)(1) and (c). To do so the federal claim must be fairly presented to the state court, to give the State the opportunity to pass upon and correct alleged violations of federal rights. *See* Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (citations omitted); Duncan v. Henry, 513 U.S. 364, 365-366, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995). While it is not necessary that the petitioner cite "book and verse" of the Constitution, the state court must be alerted to the fact that a federal constitutional claim is raised. Duncan, 513 U.S. at 365-366, 115 S.Ct. at 888 (citations omitted); *see also* McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (holding that a petitioner

---

[2] If no constitutional claims are raised, then §2254 is inapplicable and the exhaustion inquiry is irrelevant. Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct. 1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

must "do more than scatter some makeshift needles in the haystack of the state court record") (citations omitted).

The petitioner also "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (applying this one complete round requirement to state collateral review process as well as direct appeal). If a claim is not fairly presented through one complete round of state court review and review is no longer available in state court, it is procedurally defaulted and the petitioner must demonstrate cause and prejudice for the default *or* a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).[3]

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that

---

[3] The miscarriage of justice exception applies only to extraordinary cases, where a constitutional violation has probably resulted in conviction of an innocent person. McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). *See also* House v. Bell, 547 U.S. 518, 536-537, 126 S.Ct. 2064, 2076-2077, 165 L.Ed.2d 1 (2006) (explaining what must be shown to demonstrate actual innocence as a "gateway" to review of a defaulted claim).

the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also*, Carey v. Musladin, 549 U.S. 70, 74-77, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006) (§ 2254 refers to holdings, rather than *dicta*, of the Supreme Court, collecting cases to show that "[r]eflecting the lack of

guidance from this Court, lower courts have diverged widely in their treatment of defendants' claims.").

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850. *See also*, Panetti v. Quarterman, 551 U.S. 930, 953-954, 127 S.Ct. 2842, 2858-2859, 168 L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159 L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984). Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850. Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001). *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citing Chandler). There are no rigid requirements or absolute duty to investigate a particular defense. Fugate v. Head, 261 F.3d at 1217.

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

*Id.*

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Ineffective assistance of appellate counsel claims are analyzed under the test enunciated in Strickland v. Washington.  Grubbs v. Singletary, 120 F.3d 1174, 1176 (11th Cir. 1997); Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  With regard to attorney error, appellate counsel need not raise every nonfrivolous issue.  Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  463 U.S. at 751-752, 103 S.Ct. at 3313.  The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (quoting Barnes).  "Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ('Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome')."  Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000).  *See also* Bundy v. Dugger, 850 F.2d 1402, 1411 (11th Cir. 1988), *cert. denied,* 488 U.S. 1034 (1989) (discussing Strickland, and Barnes).  To determine prejudice, the court reviews the merits of the omitted or poorly presented claim, and will

find prejudice only where the claim would have a reasonable probability of success on appeal. Heath v. Jones, 941 F.2d at 1136.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams). "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner asserts that his appellate counsel was ineffective for failing to argue on appeal that it was error to permit the prosecution to submit to the jury two alternative

ways that an aggravated battery could have been committed.  He contends that this compromised the jury's ability to render a unanimous verdict and made it impossible to determine that the verdict was unanimous.  Doc. 1, p. 4 (p. 6 on ECF).  Respondent concedes that Petitioner exhausted state court remedies as to this claim because the claim was presented by petition for writ of habeas corpus in the court of appeals and denied without opinion.  Doc. 20, p. 10.

It is assumed that Petitioner intends to raise the same claim in this court that he presented in his petition for writ of habeas corpus in the state court.  There, Petitioner argued that he and the victim had a fist fight, which had ended, and Petitioner began to leave the shop yard.  Ex. R, p. 4.  He asserts that the victim then armed himself and went after Petitioner.  *Id.*  He asserts:

> No only did the State fail to prove that Mr. Lindsey used a deadly weapon 'in the commission of a battery,' the State also failed to prove that Mr. Jones sustained any injury, let alone great bodily harm, upon the fight being broken up by Mr. Stokes.

*Id.*, pp. 4-5.  He further asserts that "the underlying battery ended prior to Mr. Lindsey leaving the shop . . . ."  *Id.*, p. 5.  Petitioner argues that the jury might have found that the pipe he used to hit the victim in the head was not a deadly weapon, yet find him guilty for causing great bodily harm, or find no great bodily harm, but that he was guilty because he used a deadly weapon.  *Id.*

The information alleged that Petitioner committed an aggravated battery upon Terry Lee Jones in two different ways:

> . . . in the commission of said battery did intentionally or knowingly cause great bodily harm, permanent disability or permanent disfigurement to **TERRY LEE JONES**, *or* in the commission of said battery did use a

deadly weapon, to-wit: **a pipe**, in violation of Section 784.045(1)(a), Florida Statues.

Ex. A, R. 1 (emphasis added).  Aggravated battery is defined in Florida as follows:

(1)(a)  A person commits aggravated battery who, in committing battery:

1.  Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; *or*

2.  Uses a deadly weapon.

FLA. STAT. § 784.045(1)(a)1 and 2 (emphasis added).

A charging document in Florida may allege alternative ways of committing a

crime.  FLA. R. CRIM. P. 3.140(k)(5), adopted in 1968, provides:

*Alternative or Disjunctive Allegations.*  For an offense that may be committed by doing 1 or more of several acts, or by 1 or more of several means, or with 1 or more of several intents or results, it is permissible to allege in the disjunctive or alternative such acts, means, intents, or results.

FLA. R. CRIM. P. 3.140(k)(5).  Thus, a charging document tracking the language of a

statute and providing alternative means of committing the offense by using the word "or"

is not defective.  State v. Rand, 231 So. 2d 31 (Fla. 3d DCA 1970).

The jury was instructed that it could find in the alternative:

First, the defendant intentionally touched or struck the victim against his will or intentionally caused bodily harm to the victim.  Second, the defendant in committing the battery intentionally or knowingly caused great bodily harm to the victim *or* used a deadly weapon.

A weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm.

Ex. C, R. 117 (emphasis added).  The jury also was instructed that its verdict must be

must be unanimous.  *Id.*, R. 128.  The jury was provided a general verdict form and

found Petitioner "guilty of aggravated battery as charged." Ex. E. The jury was polled, and each juror said that the verdict was his or her verdict. *Id.*, R. 137-138.

It is not disputed that Petitioner's trial counsel did not object to the alternative pleading in the information. Doc. 20, p. 11, citing Exhibits C, F, and EE. Since there was no trial objection, Petitioner's appellate attorney would have had to show fundamental error to prevail on this claim:

> Only when error is fundamental can the error be raised on appeal in the absence of a contemporaneous objection. *Crump v. State*, 622 So. 2d 963, 972 (Fla. 1993); *State v. Johnson*, 616 So. 2d 1, 3 (Fla. 1993). An error is fundamental when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process. *Johnson*, 616 So. 2d at 3.

J. B. v. State, 705 So. 2d 1376, 1378 (Fla. 1998). Fundamental error has also been defined by Florida cases as reaching into the very heart of the proceeding, reaching the validity of the trial itself, or reaching the merits of the action. Travers v. State, 578 So. 2d 793, 797 (Fla. 1st DCA), *review denied*, 584 So. 2d 1000 (Fla. 1991) (citations omitted).

In Fountain v. State, 623 So. 2d 572 (Fla. 1st DCA), *review denied*, 629 So. 2d 132 (Fla. 1993), the charging document alleged that the defendant had committed a single offense of armed kidnapping by falsely imprisoning either victim A or victim B. The court agreed that the information was flawed, but found that "the error was waived by appellant's failure to move for dismissal." 623 So. 2d at 573. The court reasoned:

> In the instant case, no single count of the information charged separate and distinct crimes subject to different punishments. Rather, the count in question only charged alternative means of committing the offense of armed kidnapping. Consequently, *fundamental error was not involved*,

and the appellant must be deemed to have waived his challenge to the information by failing to timely move for dismissal.

623 So. 2d at 574 (emphasis added).

The case at bar is an even stronger case for permissible alternative pleading. The jury could reasonably have found that Petitioner committed this offense in both ways, by causing great bodily harm to the victim and by using a deadly weapon. The evidence shows that Petitioner struck the victim in the head with an iron pipe. There was only one victim,[4] and the offense occurred at the same time and place.[5] At the moment he struck the victim, Petitioner used the pipe as a deadly weapon, that is, capable of causing great bodily harm. He simultaneously caused great bodily harm. The use of a general verdict, under these circumstances, did not cause any error, much less fundamental error.[6] Petitioner's appellate attorney was not ineffective for failing to

_____

[4] James v. State, 706 So. 2d 64 (Fla. 5th DCA 1998) and Comer v. State, 997 So. 2d 440 (Fla. 1st DCA 2008) are distinguished as cases where the single assault was improperly alleged to been upon either victim A or victim B.

[5] The cases of Saldana v. State, 980 So. 2d 1220 (Fla. 2d DCA 2008) and Perley v. State, 947 So. 2d 672 (Fla. 4th DCA 2007) are distinguished as cases charging more than one offense occurring at different times, places, and with different weapons. In Saldana, the information charged possession of a "9mm handgun and/or .45 caliber Ruger" on three separate occasions. The court determined that since separate offenses could have been committed on separate occasions with separate firearms, the general verdict deprived the defendant of a unanimous verdict. In Perley, the information charged in one count sequential escapes which occurred at different times, though only a short time apart, and in different places. The court reasoned that the general verdict compromised the defendant's right to a unanimous verdict.

[6] "A jury is presumed to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 733, 145 L.Ed.2d 727 (2000), citing, Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). Petitioner has presented nothing to overcome this presumption, to suggest that the jury's verdict was less than unanimous.

raise a meritless issue.  Consequently, Petitioner has not shown that the appellate

court's rejection of this claim of ineffective assistance of appellate counsel has "resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  §

2254(d)(1).

**Ground Two**

      Petitioner contends that his appellate counsel was ineffective for failing to argue

on appeal that the jury instructions were defective.  Doc. 1, p. 4 (p. 6 on ECF).  The

instruction at issue is the following:  "A weapon is a deadly weapon if it is used *or*

*threatened to be used* in a way likely to produce death or great bodily harm."  Ex. C, R.

117 (emphasis added).  Petitioner contends that instructing the jury as to threatened

use was error because it allowed the jury to convict him of aggravated battery for merely

threatening to use a deadly weapon.  Doc. 1, p. 4 (p. 6 on ECF).  Respondent concedes

that Petitioner presented the same ineffectiveness claim in his petition for writ of habeas

corpus in the First District Court of Appeal.  Doc. 20, p. 14.  That court denied the claim

without opinion.  *Id.*, p. 15.

      The underlying claim, like the last one, would have been reviewed for

fundamental error had it been raised on direct appeal, since there was no

contemporaneous objection at trial.  The instruction merely provided a definition of a

"deadly weapon."  The jury would not have been confused on the evidence presented.

Petitioner himself testified that he *used* the pipe and struck Jones.  He did not merely

"threaten" to use it.   Therefore, Petitioner has not shown that the appellate court's

rejection of this claim of ineffective assistance of appellate counsel has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Three**

Petitioner contends that his defense of self-defense was unfairly negated when the trial court gave a "non-applicable" instruction. Doc. 1, p. 5 (p. 7 on ECF). He refers to this challenged instruction as the "provoker" instruction. *Id.* He asserts that while there was evidence that he was initially the "provoker" of a simple battery, Jones was the "provoker" of the later aggravated battery. *Id.* He contends that his appellate counsel was ineffective for failing to argue this on appeal. *Id.* Respondent likewise concedes that state court remedies were exhausted as to this claim.

The claim was made in greater detail in Petitioner's petition for writ of habeas corpus in the state appellate court. There, Petitioner argued that Jones first struck Petitioner and he and Jones began to fight. Ex. R, p. 15. Then, confusingly, Petitioner argues that he provoked Jones into committing the simple battery. *Id.*, pp. 15-16. He argues that this "provocation" allowed the state to seek the "provoker" jury instruction which will be described below. He argues that the "provoker" of the aggravated battery was Jones:

> Contrary to the court's determination that section 776.041 applied, the evidence is uncontested that Mr. Jones was the initial provoker of the aggravated battery because the crime was conceived through his own actions (after Mr. Lindsey had retreated and exited Mr. Jones' property) of arming himself after the simple battery had ended and chasing Mr. Lindsey down.

*Id.*, p. 15.  He said:  "Mr. Lindsey asserts that the instruction negated his sole defense under sections 776.012 and 776.031 since both statutes are legally unavailable to a defendant when he or she is designated the initial provoker of the crime."  *Id.*

Like the last two claims, there was no trial objection.  To prevail as an appellate claim, fundamental error would have to have been shown.  The trial court instructed the jury in relevant part:

> An issue in this case is whether the defendant acted in self-defense.  It is a defense to the offense with which the defendant is charged if the injury to the victim resulted from the justifiable use of force likely to cause death or great bodily harm.  The use of force likely to cause death or great bodily harm is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting any attempt to commit aggravated battery upon him. . . .
>
> However, the use of force likely to cause death or great bodily harm is not justifiable if you find the defendant initially provoked the use of force against himself, unless the force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using force likely to cause death or great bodily harm to the assailant, or, "B," in good faith, the defendant withdrew from contact with the assailant and indicated clearly to the assailant that he wanted to withdraw and stopped the use of force likely to cause death or great bodily harm, but the assailant continued or resumed the use of force.

Ex. C, R. 118-119.  This latter instruction comes almost verbatim from FLA. STAT. § 776.041(2)(a) and (b).

Respondent's argument in response draws the court's attention to subsection (1) of FLA. STAT. § 776.041, which provides that self-defense is not a defense where a person "[i]s attempting to commit, committing, or escaping after the commission of, a forcible felony."  Doc. 20, pp. 20-21.  Subsection (1) is the only portion of the statute

which "negates" self-defense.  It does so because it contains no exceptions.

Subsection (2), however, has the two exceptions set forth above in the trial court's jury

instructions.

The jury instruction in this case correctly followed Florida law on the subject.

Whether Petitioner was the person who "initially provoked the use of force against

himself" was a factual issue left for the jury to decide.  Further, the defense of self-

defense was not negated.  It simply was limited.

Accordingly, there was no state law claim to present on direct appeal and

Petitioner's appellate counsel could not have been ineffective.  Consequently, Petitioner

has not shown that the appellate court's rejection of this claim of ineffective assistance

of appellate counsel has "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  § 2254(d)(1).

**Ground Four**

Petitioner contends his *trial* attorney was ineffective for failing to set forth any

judicial acts to be reviewed when he filed his notice of appeal leading to the *Anders*[7]

brief.  Doc. 1, p. 5 (p. 7 on ECF).  He argues that "both counsel never spoke [to] one

another about petitioner's Judicial Acts to be reviewed." *Id.*  He asserts that his

substitute attorney, Karl Labertew, had no knowledge of the judicial acts to be reviewed.

*Id.*  Respondent restates the claim as follows.  Petitioner was represented at the jury

trial by James Burns.  Doc. 20, p. 22.  At sentencing, he was represented by a new

---

[7] <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

attorney, Karl Labertew. *Id.* After sentencing, Labertew served as appellate counsel, and filed the notice of appeal and a statement of the judicial acts to be reviewed. *Id.* Mr. Labertew simply cited *Anders* and said that he was unaware of any meritorious grounds for appeal. Ex. I. As restated by Respondent, it is Petitioner's complaint that Burns was more familiar with the trial and would have been better able to list the possible trial errors (judicial acts to be reviewed) than Labertew. Doc. 20, pp. 22-23.

Respondent notes that a similar claim was raised in Petitioner's Rule 3.850 motion as ground six in that motion. Doc. 20, p. 23. That motion was filed on April 30, 2006. Ex. V, p. 15 (date of signature). Ground six in this Rule 3.850 motion was titled "ineffective assistance of trial counsel," but Petitioner claimed that the ineffectiveness deprived him of his appeal. *Id.*, p. 13. He asserted that Burns failed to file the notice of appeal and designate the judicial acts to be reviewed, thereby "abandoning Defendant's right to an appeal." *Id.* He asserted that Burns was familiar with the trial issues. *Id.* He asserted that this "abandonment" caused Plaintiff's new counsel, Karl Labertew, to waive "any judicial acts to be reviewed." *Id.*, p. 14. He argued that the certification as required by *Anders* was a determination that appellate counsel was to make. *Id.* The claim there, as here, was a mixture of faulting Burns, for "abandoning his official duty to designate the judicial acts and appropriate portions of the record for review," and Labertew, who allegedly "waived any judicial acts to be reviewed." Ex. V, pp. 13-14.

The Rule 3.850 court read Petitioner's claim as a challenge to the effectiveness of appellate counsel, not trial counsel. Ex. W, p. 30. The court held that a claim of ineffective assistance of appellate counsel was not properly raised in the Rule 3.850

motion in the trial court, but should have been raised in a petition for a belated appeal in the appellate court. *Id.* The court said:

> It appears Defendant is actually attacking the appellate process, not his judgment and sentence, by arguing that the <u>Anders</u> brief filed was prejudicial as it "procedurally barred Defendant's issues from appellate review." Therefore, Defendant is actually asserting a claim of deficiency against appellate counsel; such a claim is not properly raised in the trial court. <u>See</u> e.g. <u>Barber v. State</u>, 918 So. 2d 1031 (Fla. 2d DCA 2006). Consequently, this claim is dismissed.

*Id.*

Respondent asserts, therefore, that state court remedies were not exhausted as to this claim of ineffective assistance of trial counsel. Doc. 20, pp. 24-25. Respondent points out that Petitioner earlier had filed a petition for writ of habeas corpus, and could have raised this claim of ineffective assistance of appellate counsel in that petition. *Id.*, p. 26. Respondent argues, therefore, that Petitioner cannot show cause for his procedural default.

I agree. A claim of ineffective assistance of appellate counsel, which this claim is, was defaulted. To establish cause for his procedural default, Petitioner must show that some objective factor external to the defense, not fairly attributable to his own conduct, prevented him from raising his claims previously. <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992), *citing* <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); <u>Lynn v. United States</u>, 365 F.3d 1225, 1235 and n. 20 (11th Cir.), *cert. denied*, 125 S.Ct. 167 (2004) (citing <u>Murray</u> and <u>McCoy</u>, other citations omitted). Mr. Labertew was Petitioner's attorney for the appeal, at least with respect to filing the notice of appeal and the statement of judicial acts, and he and the

next attorney, Edgar Lee Elzie, had the responsibility for preparing an adequate *Anders* brief. If the notice of judicial acts, Ex. I, or the direct appeal brief, Ex. J, were inadequate, a claim of ineffective assistance of appellate counsel should have been presented in Petitioner's petition for writ of habeas corpus in the First District Court of Appeal. It was not, and Petitioner cannot now show cause for his procedural default. This court cannot reach the merits of this claim.

**Ground Five**

Petitioner contends that the victim, Jones, committed perjury "in two or more separate proceedings under oath," that is, at trial, in a deposition, and in a complaint affidavit.[8] Doc. 1, p. 6 (p. 8 on ECF). The same claim was presented in Petitioner's fourth claim in his Rule 3.850 motion. Ex. V, pp. 9-11. The Rule 3.850 court determined that this claim, a challenge to the sufficiency of the trial evidence, "is not cognizable in a postconviction motion because the matter should have been raised on direct appeal." Ex. W, pp. 29-30. Respondent argues that the claim, therefore, is procedurally defaulted, and that Petitioner cannot show cause or prejudice for his default. Doc. 20, pp. 30-32.

This is true. Petitioner's appellate counsel did not raise the claim because no judicial acts were identified, Ex. I, and he filed an *Anders* brief. Ex. J. Petitioner had an opportunity to raise this claim directly in his pro se brief on appeal, but he did not. Ex. K, pp. 7, 12. Ineffective assistance of appellate counsel would be cause for this default,

---

[8] Petitioner does not allege that the prosecution knowingly relied upon perjured testimony. The Government's *knowing* use of false testimony violates due process. Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

but Petitioner cannot show such ineffectiveness because the state court remedies were not exhausted as to this claim.[9]

Prejudice to the outcome likewise has not been shown. In his Rule 3.850 motion, Petitioner argued that Jones committed perjury because: (1) Jones had been charged in 2001 with tampering with evidence; (2) Jones's attention and memory were impaired because he had lost four family members in one week; and (3) Jones made contradictory statements. Ex. V, p. 9-11. There is no evidence that Jones was *convicted* of tampering with evidence, and no legal argument that even if he had, the conviction would have been admissible. The second argument is unpersuasive. Jones himself testified that he could not remember whether Petitioner owed him money for car repairs because he had lost four family members in one week. Ex. C, R. 17. The jury heard this, but determined that Jones was a reliable witness. The third argument is unsupported. Petitioner did not describe these alleged contradictions in his Rule 3.850 motion. Ex. V, p. 10.

Consequently, since Petitioner has shown neither cause for his procedural default nor prejudice to the outcome, this court cannot reach the merits of this claim.

**Ground Six**

Petitioner contends that the trial court erred in refusing to grant a brief continuance of the trial so that he could call a material witness. Doc. 1, p. 6 (p. 8 on ECF). Like the fifth ground, this trial error claim was only presented in Petitioner's Rule

---

[9] Although ineffective assistance of counsel may constitute cause for a procedural default, the issue of ineffective assistance of counsel as cause for default must first be properly exhausted in state court. <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986).

3.850 motion as issue five. Ex. V, p. 11. Even though this was a claim of trial error, the Rule 3.850 court reached the merits of the claim. The state court determined that "Defendant opted to waive calling Mr. Dale as a defense witness," and summarily denied the claim. Ex. W, p. 30.

In his Rule 3.850 motion, Petitioner alleged:

> The defendant was mentally, emotionally and physically stressed, under extreme duress and the court's denial [of a brief continuance] only discouraged and disillusioned the defendant all the more.

Ex. V, p. 12. In this court, however, Petitioner now alleges that he was stressed and "didn't want to make the judge mad," and was afraid to state this on the record before waiving the request for a recess to procure Dale as a witness. Doc. 1, p. 6 (p. 8 on ECF). He alleges he knew that Dale would be there, but "not within the trial court time so defendant state[d] there's no need to prolong it." *Id.*

The state court's ruling upon the claim as presented to it in the Rule 3.850 motion was fully supported by the trial record.[10] At trial, Petitioner's attorney asked for a "brief recess" so that he could "obtain my client's brother to testify in his behalf." Ex. C, R. 60. Counsel said he had called the witness's mother. *Id.*, p. 61. He said that she had told her husband to remind the brother to come to court today, but she thought her husband had forgotten. *Id.* She said that she knew that her husband and Petitioner's brother

---

[10] The state argues that the claim is procedurally defaulted because the claim in state court was only a state law question of a denial of a continuance. It is easier here to address the merits of this claim than to discuss the state's procedural default argument. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

were working on a golf course at the Pensacola Naval Air Station.[11] *Id.*   Counsel asked

for time to call the golf course.   *Id.*   The court said it would use the time instead for the

mid-morning break, not to provide time for obtaining the witness.   *Id.*   A few minutes

later, counsel told the court that he had spoken to Petitioner's mother, and she had just

left her house to go to the Naval Air Station to pick Petitioner's brother, Darren Dale,

and bring him to the courtroom.   *Id.*, R. 63.   The court observed that it would be an hour

before they arrived.   *Id.*   The court also observed that Dale had been served with a

subpoena for a deposition and "he didn't show up for that."   *Id.*   Counsel said that Dale

would testify that Jones struck Petitioner first, and was pushing the stick at Petitioner at

the gate.   *Id.*, R. 64.   The court said that if he was such a critical witness, he should

have been at court at 8:30 a.m.   *Id.*   Counsel said that he would have Petitioner testify

and asked that they next have the charge conference.   *Id.*, R. 65.   He hoped that Dale

would appear by then.   *Id.*   The court said "all right."   *Id.*

        After the charge conference concluded, counsel for Petitioner asked to use the

telephone, and the court said "we're going to wait until twenty of, which is more than

fifteen minutes within which you thought they would be here.   If they're not here, we're

going to take the case to a conclusion."   Ex. C, R. 92.   Counsel then told the court that

his client "wants us not to call Mr. Dale."   *Id.*, R. 92-93.   Counsel asked Petitioner to

stand up, and he announced that "he wants to waive calling Darren Dale."   *Id.*, R. 93.

The prosecutor asked the court to inquire as to whether that was Petitioner's decision.

*Id.*   The court did, and Petitioner said he had heard what his attorney said and agreed

---

[11] The trial was in Pensacola.   Ex. C.

with it. *Id.* He was asked to explain why he did not want to wait for his brother to show

up, and he said: "Because I don't feel that he's going to show." *Id.* "I feel he's going to

take more time than they say, and there ain't no need to just sit here and prolong it."

*Id.*, R. 93-94. He was asked by the court if he was happy with that, and he said: "Yes,

sir, I'm happy with it." *Id.*, R. 94. Petitioner said he was satisfied with the job his

attorney had done. *Id.* His attorney said the trial started at 8:30 a.m., and it was now

10:45 a.m., and that had "given Mr. Dale plenty of time to be here." *Id.* Counsel noted

that Dale had been served with a subpoena for the trial and for a deposition on April 15,

2003, and he failed to appear for his deposition. *Id.*

Thus, it is very doubtful that Dale would have appeared even had the court

waited longer. Petitioner does not assert that Dale ever appeared or explain what

happened to him to cause him not to appear.

Further, the Rule 3.850 court's ruling that Petitioner knowingly and voluntarily

waived the presence of Dale is based upon a finding of fact entitled to deference in this

court. Petitioner has not rebutted the presumption of correctness by "clear and

convincing evidence." 28 U.S.C. § 2254(e)(1).

Petitioner cannot embellish his claim now, with new factual allegations of stress

affecting the voluntariness of his waiver. With exceptions not applicable here, §

2254(e)(2) provides that "if the applicant has failed to develop the factual basis of a

claim in State court proceedings, the court shall not hold an evidentiary hearing on the

claim . . . ." In state court, "the prisoner must be diligent in developing the record and

presenting, if possible, all claims of constitutional error. If the prisoner fails to do so,

himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met."  (Michael) Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000).  Those "stringent requirements" are not implicated here.  *See* § 2254(e)(2)(A)(i) and (ii) (requiring, as a preliminary matter, that the claim be based either on a new rule of law, or on facts not previously discoverable by due diligence).

For all of these reasons, therefore, Petitioner has not shown that the trial court's rejection of this claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Seven**

Petitioner argues that there was trial error because the verdict form did not include the lesser included offense of felony battery as alleged in the information.  Doc. 1, p. 7 (p. 9 on ECF).  Petitioner argues that the jury was confused by the verdict form, as evidenced by the jury's question to the court during deliberations.  *Id.*

This is a trial error claim and it was not presented on direct appeal.  It was not presented in the post-conviction motions, either, though neither was the proper avenue for raising this claim.  Moreover, failure to instruct the jury as to a lesser included offense under state law in a noncapital case does not state a federal claim.  Perry v. Smith, 810 F.2d 1078 (11th Cir. 1987); Harris v. Crosby, 151 Fed.Appx. 736 (11th Cir. Sep 02, 2005) (not selected for publication in the Federal Reporter, No. 05-10962).

Since no federal claim is presented, the exhaustion inquiry is not relevant. The claim should be summarily denied.

**Ground Eight**

Petitioner contends that the trial court erred when it denied his motion for judgment of acquittal. Doc. 1, p. 7 (p. 9 on ECF). He argues that the evidence was not sufficient to support the verdict. *Id.* At trial, Petitioner's attorney argued that a judgment of acquittal was warranted because the evidence showed that Petitioner struck Jones with the pipe in self-defense. Ex. C, R. 60. Respondent concedes that to the extent that the claim here is the same as made at trial, state court remedies have been exhausted and argues the merits. Doc. 20, p. 40.

It is "an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." <u>Jackson v. Virginia</u>, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979), *relying on* <u>In re Winship</u>, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Sufficiency of the evidence is determined "with reference to the substantive elements of the offense as defined by state law." <u>Machin v. Wainwright</u>, 758 F.2d 1431, 1435 (11th Cir. 1985), citing <u>Jackson v. Virginia</u>, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16. The question is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis by the Court); <u>Fallada</u>

v. Dugger, 819 F.2d 1564, 1570 (11th Cir. 1987). "The *Jackson* standard, which focuses on whether any rational juror could have convicted, looks to whether there is sufficient evidence which, if credited, could support the conviction." Schlup v. Delo, 513 U.S. 298, 330, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995).

There was sufficient evidence to sustain the jury's verdict. There was evidence that Petitioner committed a battery upon Jones and both knowingly and intentionally caused great bodily harm to Jones and used a deadly weapon to commit the battery. There was evidence of self-defense from Petitioner's testimony, but there was contrary evidence from Jones and the other witnesses.[12] The jury had sufficient evidence to reject Petitioner's claim of self-defense. There was evidence that Petitioner was told to leave. There was evidence that at the gate, Petitioner was swinging the pipe like a baseball bat, Jones let his guard down, and Petitioner struck Jones with the pipe. Therefore, Petitioner has not established that the trial court's denial of his motion for judgment of acquittal has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

---

[12] When a criminal defendant testifies in his defense, he "[runs] the risk that the jury might conclude the opposite of his testimony is true." Atkins v. Singletary, 965 F.2d 952, 961, n. 7 (11th Cir.1992) (citation omitted), *cert. denied*, 515 U.S. 1165 (1995). "[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995), *cert. denied*, 516 U.S. 1111 (1996). *See also* United States v. McCarrick, 294 F.3d 1286, 1293 and n. 12 (11th Cir. 2002) (clarifying that disbelief of a defendant's testimony can be used to help establish guilt as long as there is other probative evidence) (citing Brown, other citations omitted).

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Michael W. Lindsey challenging his conviction for aggravated battery with great bodily harm or with a deadly weapon in the Circuit Court of the First Judicial Circuit, in and for Escambia County, Florida, case number 02-5354-CF, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on December 16, 2009.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**